**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ROSS ROLEY        . | * | |
| | * | |
| Plaintiff, | * | Civil Action |
| | * | |
| v. | * | No. 18-cv-00152 |
| | * | |
| NATIONAL PROFESSIONAL EXCHANGE, INC., et al. | * | |
| | * | |
| Defendants. | * | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION**
**FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' MOTION**
**FOR PARTIAL SUMMARY JUDGMENT**

Defendants National Professional Exchange, Inc. ("NPX") and Sharon Bell ("Bell"), by FERGUSON, SCHETELICH & BALLEW, P.A., Craig F. Ballew, and Rafiq R. Gharbi, their attorneys, submit this Memorandum in opposition to Plaintiff Ross Roley's ("Roley's") Motion for Summary Judgment and in support of their Motion for Partial Summary Judgment.

## I.        PROCEDURAL BACKGROUND.

On January 17, 2018, Plaintiff Ross Roley brought a four count Civil Complaint in United States District Court for the District of Maryland ("Complaint") against Defendants NPX and Bell. Counts I and III are brought only against Defendant NPX and allege breach of contract. Counts II and IV are brought against Defendants NPX and Defendant Bell and allege violations of Maryland's Wage Payment and Collection Law and Hawaii's Wage Payment Law. On December 23, 2019, Plaintiff Roley filed his Motion for Summary Judgment.

With respect to Counts II and IV, there is no genuine dispute as to any material fact and, as a matter of law, Defendants are entitled to a judgment. Contrary to the assertions made in Plaintiff Roley's Motion, the Plaintiff does not meet the standards necessary to seek relief under Maryland's Wage Payment and Collection Law. As to Count IV, Hawaii's Wage Payment Law, Plaintiff Roley is not entitled to relief because the statute of limitations ran prior to the filing of the Complaint.

Separately, the evidence confirms that Defendant Bell is not a proper defendant under either Count II or Count IV. Defendant NPX is a Section 501(c)(6) non-profit membership organization. Bell Deposition Transcript ("Tr."), attached hereto as Defendants' Exhibit 1,  at p. 14:4-8. Defendant Bell had no equity interest in Defendant NPX and she lacked the crucial control over the work performed by Plaintiff Roley when he was providing services for the U.S. Pacific Command J8 Resources and Assessment Directorate.

For the reasons to be discussed, Plaintiff's Motion on Counts II and IV should be denied and Defendant's Motion on those Counts should be granted. Separately, Defendant Bell is entitled to judgment as a matter of law because she is not a proper defendant.

Finally, because genuine disputes exist on Plaintiff's claims for breach of contract (Counts 1 and III), the Court should deny Plaintiff's Motion on these Counts.

## II.     STANDARD OF REVIEW.

A party may move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, "identifying each claim or defense—or the part of each claim or

defense—on which summary judgment is sought." FED. R. CIV. P. 56(a).  The court is to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*.  If sufficient evidence exists for a reasonable jury to render a verdict in favor of the opposing party, a genuine dispute of material fact is presented and summary judgment should be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).  However, "the mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat the motion.  *Id.* at 252, 106 S.Ct. 2505.

In resolving a motion for summary judgment, a district court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Greater Baltimore Ctr. For Pregnancy Concerns, Inc. v. Mayor and City Council of Balt.,* 721 F.3d 264, 283 (4th Cir.2013); *FDIC v. Cashion,*720 F.3d 169, 173 (4th Cir.2013). Moreover, in resolving a summary judgment motion, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

### III.    FACTUAL BACKGROUND.

Plaintiff Roley provided services to the U.S. Pacific Command J8 Resources and Assessment Directorate ("USPACOM"). These services were provided pursuant to the Intergovernmental Personnel Act of 1970 ("IPA"). His employment at USPACOM began on December 1, 2011 and ended on November 30, 2016. *See*, Plaintiff's Complaint, ECF No. 1 at ¶ ¶ 4, 15 &16.

The Intergovernmental Personnel Act of 1970 provides a means for individuals to contract to do work with government entities via Assignment Agreements. The Intergovernmental Personnel Act Mobility Program provides for the assignment of personnel between the Federal Government and state and local governments, colleges and universities, Indian tribal governments, federally funded research and development centers, and other eligible organizations.[1]

Plaintiff Roley's employment with USPACOM was the result of his efforts to find a way to work for the government. As Plaintiff Roley's affidavit confirms:

> On or around March 2011, I began looking for an organization where I could work under an IPA assignment agreement at PACOM. On or around this time, the Chief of the Innovation and Experimentation Division at PACOM recommended that I contact NPX about an assignment opportunity.

> Roley Affidavit, attached to Roley's Motion as Exhibit 1, at ¶ 5.

In 2011, USPACOM approached Defendant NPX and asked it to coordinate the hiring of Plaintiff Roley because USPACOM needed his skill set. Bell Tr. at pp. 15:10-16:20 and pp. 30:20-34:20. Following USPACOM's request, Defendant NPX contacted Plaintiff Roley and engaged him to perform work for USPACOM. Plaintiff Roley's employment with USPACOM spanned three (3) separate Assignment Agreements under the IPA. *See,* Pff. Exhibits 3-5.

The first Assignment Agreement ran from December 1, 2012, through November 30, 2014.[2] Plaintiff Roley was to receive a salary in the amount of $176,440.00 per annum and, consistent with the terms of the Assignment Agreement, reimbursement for

---

[1] https://www.opm.gov/policy-data-oversight/hiring-information/intergovernment-personnel-act/#url=Overview

[2] From December 1, 2011 to November 30, 2012 Plaintiff Roley worked on an "SCRA" contract through NPX while USPACOM was in the process of getting funding for Plaintiff Roley's Assignment Agreement. Bell Tr. 35:9-35:18.

travel and transportation expenses associated with the Plaintiff's duties and responsibilities while on assignment at USPACOM. *See,* Joint Statement, ECF No. 32 at ¶ 17.

The second Assignment Agreement ran from December 1, 2014, through November 30, 2015. Plaintiff Roley was to receive a salary in the amount of $178,204.00 per annum and, consistent with the terms of the Assignment Agreement, reimbursement for travel and transportation expenses associated with the Plaintiff's duties and responsibilities while on assignment at USPACOM. *See,* Joint Statement at ¶ 18.

The third Assignment Agreement ran from December 1, 2015, through November 30, 2016.  Plaintiff Roley was to receive a salary in the amount of $179,986.00 per annum and, consistent with the terms of the Assignment Agreement, reimbursement for travel and transportation expenses associated with the Plaintiff's duties and responsibilities while on assignment at USPACOM.  *See,* Joint Statement at ¶19.

The Assignment Agreements expressly stated that USPACOM was responsible for funding Plaintiff Roley's salary:

> *USPACOM J81 will be responsible for funding Mr. Roley's salary and related costs from RDT&E funds allocated to J81, subject to availability, with prior concurrence from J02 & J84.  This Agreement is subject to immediate termination by USPACOM due to funding limitations without fiscal penalties or obligation.*

The Assignment Agreements also expressly stated that NPX was not financially responsible for funding Plaintiff Roley's salary:

> *Certified Organization: National Professional Exchange (NPX) Fiscal Obligations: None.  NPX is a non-profit organization with limited financial resources supporting the technology base of the Department of Defense through the cooperation of industry and government. NPX will continue to administer the payment of Mr. Roley's salary and will*

> *continue to withhold contributions to taxes and benefits and bill the government for such costs.*

> *See,* Roley Motion Exhibits 3-5 at Part 9, Sections 26 & 27.

Plaintiff Roley's employment ended on November 30, 2016. *See*, Complaint at ¶ 4. In December 2016, it came to Plaintiff Roley's attention that he had not been paid his full salary. *See,* Complaint at ¶ 14. Thereafter, in March 2017 Plaintiff Roley e-mailed and called Defendant Bell about the issue. Bell Tr. at p. 51:2-12 and NPX Document Production pp. 263-267 attached hereto as Defendants' Exhibit 2. NPX reviewed the matter and confirmed that there was an underpayment issue. *See,* Defendant NPX's Answer to Interrogatory No. 10, attached hereto as Defendants' Exhibit 3, and Bell Tr. at pp. 52:1-53:9. The underpayment was the result of an accounting error.  The bookkeeper processing the payroll had been using an incorrect number in her calculations and this had been the source of the underpayment. *See,* Defendant NPX's Answer to Interrogatory No. 10. This error was explained to Plaintiff Roley and NPX paid him $13,000 to begin to address the issue. *Id.*

After being notified by Plaintiff Roley, Defendant Bell communicated with PACOM to request that additional invoices be submitted so that Plaintiff Roley could get paid. *See,* Defendant NPX's Answer to Interrogatory No. 10. Defendant Bell's efforts were unsuccessful. [3]

---

[3] Even after litigation began, Defendant NPX continued to try and get USPACOM to accept amended invoices so that Plaintiff Roley could get paid. *See,* Defendant NPX's Answer to Interrogatory No. 10. A letter was sent to PACOM further requesting permission to submit amended invoices. *Id.* On December 10, 2018, PACOM responded with the letter stating that it did not grant NPX's request to submit amended invoices. *Id.*

Both USPACOM and NPX are parties to Plaintiff Roley's Assignment Agreements. As noted earlier, USPACOM was solely responsible for funding his salary. Nevertheless, Plaintiff Roley elected not to sue USPACOM, despite having every opportunity to name them as a Defendant.

## IV.   ARGUMENT.

### A.   Plaintiff Roley is Not Entitled to Relief Under the Maryland Wage Payment and Collection Law.

At the core of the dispute regarding Count II is a fundamental fact: Plaintiff Roley lived in Hawaii and performed his services for USPACOM in Hawaii. Paragraphs 4 and 11 of the Complaint confirm these facts:

> 4.  Plaintiff Ross Roley is a former employee of Defendant NPX who served as an Intergovernmental Personnel Act Civilian (IPA) employed as a USPACOM Energy Office Lead from December 1, 2011 to November 30, 2016. Plaintiff is a resident of the State of Hawaii and resides at 98-708 Nohoaupuni Place Aiea, HI 96701.

> 11. Defendants NPX and Ms. Bell assigned Plaintiff to provide IPA-related employment services to the U.S. Pacific Command J8 Resources and Assessment Directorate aka ("USPACOM").[4]

Despite living and working for USPACOM in Hawaii, Count II seeks relief under Maryland's Wage Payment and Collection Law ("MWPCL"). MD. Code Labor & Employ. §§  3-501-3-509.

To qualify for relief under the MWPCL, an employee must earn wages in Maryland. The MWPCL applies to employers who employ individuals "in the State."

---

[4] The Complaint was filed on January 17, 2018. Thus, the relevant three-year period of review under the MWPCL is the period between January 1, 2015 and January 2018. Md.Code. Ann., Cts. & Jud. Proc. § 5–101.

MD. Code Labor & Employ. § 3-501(b). MWPCL further defines the term "employ" as "(i) allowing an individual to work; and (ii) instructing an individual to be present at a work site."

Both the Maryland Courts and this Court have, on several occasions, considered what is required to permit an individual to bring a claim under the MWPCL. In *Himes Associates v. Anderson*, 178 Md. App. 504 (2008), the Maryland Court of Special Appeals considered whether a Virginia employer could be held subject to liability under the MWPCL. In that case, the Virginia employer, Himes Associates, Ltd, entered into an employment agreement with Anderson, a Maryland resident. The record reflected that Anderson was required to perform many of his duties in Maryland. His primary job was to supervise a Lockheed Martin project. *Himes,* 178 Md. App. at 530. This work as a project manager resulted in him traveling twice a month to Baltimore to meet with Lockheed Martin employees. *Id.* He also performed work on a project in Aberdeen, Maryland and Gaithersburg, Maryland. *Id.*

Mr. Anderson brought a claim under Maryland's Wage Payment and Collection Law. *Id.* at p. 534. Anderson asserted that he was "employed as an individual" in Maryland and that this made Himes Associates an employer subject to liability under the MWPCL. Himes Associates argued that the court should analyze whether the plaintiff was "regularly" employed in Maryland consistent with the analysis applied under Maryland's Workers' Compensation Act. *Id.* The Court disagreed:

> As noted above, in relevant part, LE Section 3-501 defines "employer" to "include [ ] any person who employs an individual in the State …." The operative word in that sentence – "employs" – is defined in LE Section 3-101 "'[E]mploy' means to engage an individual to work…

'Employ" includes: (i) allowing an individual to work; and (ii) instructing an individual to be present at a worksite.

*Himes Associates* 178 Md. Ap. At 535.

The court then went on to find that Anderson's work as a project manager, traveling twice a month to Baltimore to meet with Lockheed Martin employees, was sufficient to establish Anderson's connection with Maryland and find that Himes was an employer under the MWPCL.

In *Cunningham v. Feinberg,* 441 Md. 310, 107 A.3d 1194 (2015), the Maryland Court of Appeals analyzed whether an attorney, who lived in Virginia and worked for a Virginia law firm, was able to make a claim for wages under the MWPCL. Plaintiff Cunningham had an employment contract with Feinberg & Associates to work as an attorney. Plaintiff Cunningham argued that his various court appearances, meetings, depositions, and other work-related activities in Maryland sufficed to establish that he was employed in Maryland. Feinberg & Associates argued that the plaintiff's Virginia contract controlled, and further that the employee did not work in Maryland. The Court disagreed. The Court agreed with the application of the analysis in *Himes*, and reiterated that certain factual scenarios can result in foreign-state employees and employers being subject to the MWPCL.

Based on our analysis of the doctrine of *lex loci contractus,* we come to a conclusion shared by the Court of Special Appeals: employees working for employers located in Virginia are not limited to the remedies available under Virginia's wage payment laws, but may, in certain circumstances, be answerable to claims under the MWPCL in Maryland courts.

*Cunningham*, 441 Md. at p. 336.

The Court concluded that Plaintiff Cunningham's contacts with Maryland were enough to be deemed employed in Maryland under the MWPCL. *Id*.

In *Hausfeld v. Love Funding Corp.,* 131 F. Supp. 3d 443, 447 (D. Md. 2015), this Court addressed the standard for establishing minimum contacts for the purpose of being employed in Maryland. Mr. Hausfeld was a Loan Originator for Love Funding Corporation ("LFC"). He sought the payment of certain commissions which were not paid to him after his termination, and filed a claim in Maryland under the MWPCL to collect the commissions. LFC asserted that the MWPCL was inapplicable to the case.

In addressing the issue, the Court noted that LFC was based out of Washington, D.C. and that Mr. Hausfeld was a Maryland resident. *Hausfeld* at p. 448. Although he worked from LFC's office in Washington D.C., Hausfeld often worked from his home in Maryland, using both his cell phone and computer to contact borrowers and potential borrowers. *Id.* Many of these borrowers and potential borrowers were businesses and residents of Maryland. *Id.* Loan originations called for Hausfeld to attend meetings at the borrower's premises and to conduct site visits to assess potential real estate collateral. *Id.* To expand LFC's business in Maryland, Hausfeld attended networking and marketing activities in Maryland. *Id.* at p. 449.

Having reviewed the analysis in *Himes* and concluded that Hausfeld had worked in Maryland to "an even greater extent than the employee in *Himes*," the Court found that Hausfeld's activities were "sufficient to meet the threshold of employment in Maryland." Thus, the Court held that LFC was an "employer" under the MWPCL. *Id.* at pp. 455-456.

     **1.**     **<u>Plaintiff Roley's Contacts With Maryland Were Insufficient to Establish That He Was Employed in Maryland</u>**

As previously noted, Plaintiff Roley both lived and performed his services for USPACOM in Hawaii. Plaintiff's Motion attempts justify his MWPCL claim based upon a few isolated and indirect contacts with Maryland. This attempt cannot withstand review.

     Plaintiff Roley's affidavit states that he visited Maryland seven (7) times over a span of almost five (5) years while working for USPACOM. Roley Aff. ¶ 11, attached to Roley's Motion as Pff.'s Exhibit 1. Plaintiff Roley's visits to Maryland were to attend summits at the National Harbor convention center, a few minutes from the District of Columbia. *Id.* There was also a single visit to Rockville, Maryland to attend a work group. *Id.* Plaintiff Roley did not come to Maryland to provide services at an NPX or USPACOM worksite. NPX did not instruct Plaintiff Roley to attend these events.

     Seven isolated visits over almost five years (December 1, 2011 through November 30, 2016) fails to constitute being "employed in Maryland." Plaintiff Roley's Motion tries to assert that he "frequently traveled to Maryland." Roley Motion at p. 8. Seven times in almost five years cannot be deemed "frequent." The fact that Plaintiff Roley—in the course of almost five years-- attended six summits at the National Harbor convention center and one work group in Rockville does not render him a Maryland employee.

     The infrequency of Plaintiff Roley's visits stands in contrast to the plaintiff in *Himes* whose primary job was to supervise a Lockheed Martin project, traveling twice per month to Baltimore to meet with Lockheed Martin's employees. *Himes,* 178 Md.

App. at 530. The infrequency and nature of Plaintiff Roley's visits to Maryland similarly stands in contrast to the plaintiff in *Cunningham*.  In that case the plaintiff was coming to Maryland to make various court appearances, attend meetings, take and defend depositions, and engage in other work-related activities. *Cunningham*, 441 Md. at p. 317. Here Plaintiff Roley was attending summits that happened to be held at the National Harbor convention center. Roley Aff. ¶ 11.

Finally, Plaintiff Roley's visits to the convention center are nothing compared to the contacts of the plaintiff in *Hausfeld*.  He worked from his home using his cell phone and computer to contact borrowers and potential borrowers. *Hausfeld* at p. 448.   Many of these borrowers and potential borrowers were Maryland businesses and residents. *Id.* Loan originations called for him to attend meetings at the borrower's premises and to conduct site visits. *Id.*   To expand LFC's business in Maryland, Hausfeld attended networking and marketing activities in Maryland.  *Id.* at p. 449.

While the threshold for establishing employment in Maryland under the MWPCL may not be high, these cases reflect that Plaintiff Roley's contacts were materially less than that of the other plaintiffs. In light of federal and Maryland courts' recent decisions on the issue of sufficient contacts to establish Maryland employment, Plaintiff Roley's isolated and infrequent contacts with Maryland do not support a finding that he is covered by the MWPCL.[5]

---

[5] Part of Plaintiff's motion argues because Defendant NPX had its principal place of business in Maryland, and that location coordinated payroll functions, he can therefore bring a claim under the MWPCL. Roley Memorandum at pp. 12-13. That argument ignores the controlling case law's analysis of the issue, which focuses on whether the individual in question was actually employed in Maryland. If taken to its ultimate conclusion, Plaintiff's assertion would suggest that he could bring a claim under the MWPCL even if he had never stepped foot in Maryland. This is inconsistent with the controlling Maryland case law analyzing the applicability of the MWPCL to foreign-state employees.

In *Sigala*, Judge Hazel considered the applicability of the MWPCL to a non-Maryland employee and held that the operative analysis for determining whether the MWPCL was applicable was whether an employee performed work in Maryland. *Sigala v. ABR of VA, Inc.,* No. GJH-15-1779, 2016 WL 1643759, at *6 (D. Md. Apr. 21, 2016). Judge Hazel's opinion thoroughly discussed the choice of law discussion, and essentially held that it is irrelevant where the question is whether the MWPCL is applicable. The opinion gave leave to the parties to continue discovery to determine whether there were facts to support the assertion that the employee performed work in Maryland.

No such leave is necessary here. Discovery has concluded and the facts do not support Plaintiff Roley's assertion that he performed work in Maryland at a frequency or in a manner that would deem him to be "employed in Maryland." As such, Defendants NPX and Sharon Bell are entitled to summary judgment as to any claims under the MWPCL.

## 2.      <u>Travel Expenses Are Not Wages.</u>

The arguments set forth above related to salary underpayment apply equally to the claims for travel expenses. In addition, the claim for travel expenses cannot be brought under Count II because travel expenses are not wages.

Section 3-501(c) of the MWPCL defines the term wage as follows:

(c)      (1)    "Wage" means all compensation that is due to an employee for employment.
                (2)    "Wage" includes:
                        (i)    a bonus;
                        (ii)   a commission;
                        (iii)  a fringe benefit;
                        (iv)   overtime wages; or
                        (v)    any other remuneration promised for service.

MD. Code Labor & Employ. § 3-501(c).

Although broad, this definition confirms that a wage involves compensation "promised for service." Reimbursement of a travel expense is not compensation promised for service; thus, the dispute regarding the travel expenses cannot be addressed under the MWPCL.

In his Motion for Summary Judgment, Plaintiff Roley cites *Whiting-Turner Contracting Co. v. Fitzpatrick,* 366 Md. At 295 (2001), to support his assertion that reimbursement for travel expenses constitutes wages as defined under Maryland law.  In fact, *Fitzpatrick* involved a dispute over a bonus, not the reimbursement of expenses. Maryland's definition of wages focuses upon the different types of compensation paid for services.  Reimbursing an individual for travel expenses is functionally different from compensating an employee for their services.

**B.** **Plaintiff Roley is Not Entitled to Relief Under Hawaii's Wage and Hour Law.**

Count IV of the Complaint asserts a claim under Hawaii's Payment of Wages law. This claim does not fall within the limitations period proscribed by the statute under which he sues. HRS §388 has a 1 year limitations period. *See*, HRS § 388-11. Hawaii's Revised Statutes §388-11 regarding employee remedies states, "No claim shall be accepted by the director after the expiration of one year from the date the wages are due and payable." Haw. Rev. Stat. Ann. § 388-11. See Defendants' Exhibit 4, attached hereto.

Hawaii's general statute of limitations is 6 years for actions for recovery of any debt founded upon any contract, obligation, or liability. *See* §657-11. However, this statute of limitations does not apply because there is a specific limitations period stated in

§ 388-11. Whenever possible, courts should apply the state limitations period governing actions founded on a liability created by statute. *Bill's Crane Service, Inc. v. Quisenberry*, 1982, 545 F. Supp. 359. *See also*, *Crawford v. Crawford*, 1987, 69 Haw. 410, 745 P.2d 285. Where the statute sets a specific limitations period, the catch-all 6 year limitations period does not apply.

Plaintiff's Memorandum cites *Kyne v. Ritz-Carlton Hotel Co.*, No. CIV. 08-00530 ACK, 2011 WL 6030978 (D. Haw. Dec. 2, 2011) as its only support for establishing that §388-11 is governed by the six year "catch-all" limitations period. The Court in *Kyne* ignores the clear, unambiguous language of the statute articulating a 1 year limitations period. *Kyne* is an unreported Order embedded within a convoluted procedural saga regarding a tipped employee service charge issue. The *Kyne* defendants did not raise the argument that the language in §388-11 articulating the 1 year statute of limitations. Instead the issue of a competing statute that was argued to be read *in pari materia* with 388 was at issue, so a four year statute was raised. *See*, *Kyne* at *6–7 (D. Haw. Dec. 2, 2011). As a result, the Kyne Court did not review the issue of the one year limitations language in §388-11. As a District Court Order, the Kyne Order is not controlling, and is not *stare decisis*. S*ee, e.g., Reid v. BCBSM, Inc.*, 787 F.3d 892, 895 n.2 (8th Cir. 2015) (noting that district court rulings "cannot be used as *stare decisis*"); *McGinley v. Houston, 361 F.3d 1328, 1331* (11th Cir. 2004) ("The general rule is that a district judge's decision neither binds another district judge nor binds him, although a judge ought to give great weight to his own prior decisions."). This Court must review the applicable statute where there is clear language articulating a limitations period. *Kyne*

does not provide binding precedent that § 388-11 has a 6 year limitations period based on a single trial court level Order on a Motion for Summary Judgment.

Plaintiff Roley's claims under Count IV are made specifically under HRS §388. *See*, Complaint at ¶52. Section 388-11 confirms that the director will not accept any claims after the expiration of one year from the date the wages are due. HRS §388's inclusion of a specific time period for bringing a claim for unpaid wages creates a separate statute of limitations. Since the one year limitations period applies and the alleged wages owed fall outside that one year time period, Plaintiff Roley's claim under Hawaii's Wage Payment Law is untimely.

**C.**   **Defendant Bell is Not a Proper Defendant and Should Be Dismissed from Counts II and IV.**

Plaintiff Roley seeks to impose personal liability upon Defendant Bell under Counts II and IV. Because Defendant Bell cannot be deemed an employer, the claims against her (Counts II and IV) must be dismissed.

1.   Maryland Law Applies The Economic Realities Test and Considers The Totality of The Circumstances.

This Court has previously addressed whether a manager can be deemed an employer under the MWPCL. In *Watkins v Brown*, 173 F. Supp.2d 409 (D. Md 2001), Chief Magistrate Judge Gesner found that a general manager did not fall under the definition of an employer. This conclusion was guided by her reading of the MWPCL's definition of the term "employer" and contrasting it with the definition of an employer under federal and state minimum wage and overtime laws. In *Campusano v. Lusitano*, 208 Md. App. 29, 56 A.3d 303 (2012), the Maryland Court of Special appeals elected to

overlook the definitional differences and apply the "economic reality test" to determine if and when a manager can be deemed an employer under the MWPCL.

Recently, this Court addressed the factors of the economic realities test:

In *Newell*, 407 Md. at 651, 967 A.2d at 772, the court identified a four-factor test "for formal control" as "the most appropriate" version of the economic reality test. The pertinent considerations are "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'

*Macsherry v. Sparrows Point, LLC*, No. CV ELH-15-22, 2017 WL 3315262, at *34 (D. Md. Aug. 3, 2017).

As noted in *Campusano* and by this Court in *Hardison v. Healthcare Training Sols., LLC*, PWG-15-3287, 2017 WL 2276840, at *2 (D. Md. May 25, 2017), the totality of the circumstances is to be taken into consideration, and the four factor economic reality test is not to be applied mechanically. [6]

2.  Defendant Bell's Lack of An Ownership Interest In NPX Supports the
    Fact That She Is Not An Employer.

Analysis of whether an individual can be deemed an employer includes assessing whether the individual has an economic or ownership interest in the company.  The *Campusano* court adopted the analysis *Baystate Alternative Staffing v. Herman*, a First

---

[6] The assertion that Plaintiff Roley's placement in a "temporary" assignment with USPACOM makes application of the economic realities test "inappropriate" (Plaintiff's Memorandum at p. 23) is without merit.  First, contrary to Plaintiff Roley's suggestion, *Newell* does not find the application of the economic realities test inappropriate when employment is for a temporary assignment. Second, the claim of a "temporary" assignment ignores the undisputed facts of this case. Plaintiff Roley sought out USPACOM and spent months talking with them about working under an IPA assignment agreement. Roley Aff. ¶ 5. USPACOM sent Plaintiff Roley to talk to NPX and then contacted NPX to coordinate Plaintiff's hire. Bell Tr. at pp. 15:10-16:20 and pp. 30:20-34:20.  Plaintiff Roley's entire period of employment, from December 2011 through November 2016, was with USPACOM. Under these circumstances, application under the economic realities test is appropriate.

Circuit decision, to clarify the "relevant indicia" for determining who is an employer. The

Court in *Macsherry* discussed the two cases:

> The *Campusano* Court was also guided by First Circuit's decision
> in *Baystate Alternative Staffing v. Herman,* 163 F.3d 668 (1st Cir.1998), a
> FLSA case. *See* 208 Md.App. at 40, 56 A.3d at 310. *Baystate* is
> illuminating.
>
> In *Baystate,* the First Circuit identified "relevant indicia" of control, such
> as "an individual's operational control over significant aspects of the
> business and an individual's ownership interest in the business...." *Id.* at
> 678. It said, *id.*: "Such indicia, while not dispositive, are important to the
> analysis, because they suggest that an individual controls the corporation's
> financial affairs and can cause the corporation to compensate (or not to
> compensate) employees in accordance with the FLSA." *Id.*
>
> *Macsherry*, at *7 (D. Md. Oct. 23, 2015).

Even more recently, this court stated *in Rivera v. Mo's Fisherman Exchange*,

"Overall, the court should look to the 'economic reality of an individual's status as

an employer,' which may include other factors, such as financial interest in the enterprise

and job description. *Rivera v. Mo's Fisherman Exch., Inc.*, No. CV ELH-15-1427, 2018

WL 2020423, at *8 (D. Md. May 1, 2018) (quoting *Gionfriddo v. Jason Zink, LLC*, 769

F.Supp.2d 880, 890 (D. Md. 2011).

Plaintiff Roley's Motion cites two cases to support his assertion that Defendant

Bell's lack of an ownership interest in NPX should not matter: *Donovan v. Sabine*

*Irrigation*, 695 F.2d 190 (5th Cir. 1983); and, *Donavan v. Agnew*, 712 F.2d 1509 (1st

Cir. 1983).  Review of these decisions confirms that they do not support Plaintiff's

position.  In fact, both support Defendant Bell's assertion that she never had "functional

control" such that she should be considered an employer.

In *Donovan v Sabine Irrigation,* individual Defendant Charles H. Alberding asserted that he should not be considered an employer and pointed to the fact that he did not have any equity ownership in the corporation to support his position.  In rejecting this contention the court noted:

> Alberding and a co-venturer each purchased one-half of Sabine's stock in the early 1950s. Alberding transferred this stock in the early 1960s, but continued as corporate president, a position he has held for over 30 years. During the pertinent period, Scally served as Sabine's vice-president, and Alberding's wife, B.W. Alberding, **\*193** was secretary-treasurer. Sabine Water Canal, Inc. (Sabine Canal) and Washington-Youree Corporation (Washington), Louisiana corporations managed by Alberding in the capacity of president, with Scally as vice-president and B.W. Alberding as secretary-treasurer, each acquired 50% of Sabine's stock sometime prior to 1976.  Tucker Moore, Alberding's son-in-law, owns 100% of the stock in both Sabine Canal and Washington, and is employed as a hotel manager by Gulf Beach Club, Inc. Alberding owns the controlling interest in Gulf Beach and serves as its president.

> *Sabine*, 695 F.2d at 192-93.

The court later concluded that "The corporation's very survival depended on Alberding's largesse, with his decision to terminate all financial aid precipitating its near-demise. On the present record, we are convinced that the district court correctly found that Alberding was an employer within the purview of the Act."

> *Sabine*, 695 F.2d at 195.

In *Donovan v. Agnew*, suit was brought by the Secretary of Labor under the FLSA against Maxim Industries, Inc. and individual Defendants David Agnew and Charles Bradley.  On appeal, the First Circuit reviewed whether Defendants Agnew and Bradley should be considered an employer and noted the following:

> The district court here found that during the relevant period Maxim Industries, Inc. was wholly owned by Maxim, Inc., which in turn was owned by appellants Agnew and Bradley, who together were President,

> Treasurer, Secretary and sole members of the Board of Directors for
> Maxim Industries, Inc. It found that both appellants maintained offices at
> Maxim Industries' Middleborough plant and that both were actively
> engaged in the management, supervision and oversight of Maxim
> Industries' affairs, including employee compensation of benefits.

> *Agnew*, 712 F.2d at 1511.

The First Circuit declined to set aside the trial court's decision concluding that the

findings were not "clearly erroneous" noting:

> The question before us, then, is whether corporate officers with a
> substantial ownership interest in the corporation who are directly involved
> with decisions effecting employee compensation may be held personally
> liable for the corporation's failure to pay minimum and overtime wages as
> required under the FSLA.

> *Id.*

*Agnew* involved two individuals who owned a company which owned the

corporate defendant, worked within the corporate defendant's plant, and made the

decisions about employee compensation.  In *Sabine*, the individual defendant tried to use

his lack of an ownership interest to avoid being deemed an employer. The evidence,

however, confirmed that he had owned Sabine Irrigation at one time but then undertook

extensive corporate transactions whereby he could *say* he did not have ownership interest

in the company; nevertheless, he was found to have control over the corporate

defendant's owner who was both his son and his employee.

*Sabine* and *Agnew* are underlined different fact situations compared to the facts of

this case.  Defendant Bell never had an equity interest in NPX, directly or indirectly.

Here offices were not located at USPACOM's facilities in Hawaii, and questions about

Plaintiff Roley's salary and increases in his salary were determined by USPACOM, not

Defendants NPX or Bell.

20

3. <u>Defendant Bell Lacked The Crucial Control Over Roley's Work To Be Deemed An Employer</u>.

NPX is a Section 501(c)(6) non-profit membership organization providing expertise to the Government and commercial sector where needed, as needed. Bell Tr. at pp. 14:4-16:20. Defendant Bell was NPX's Managing Director. As Managing Director, Defendant Bell had no equity interest in the non-profit organization. Bell Tr. at p. 58:12-13. Decisions as to hiring and firing were made by USPACOM, not Defendant Bell. Bell Tr. at 59:14-16 and pp. 59:21-60:3. Similarly, she did not set the annual salary for Plaintiff Roley's position; rather, that decision was made by USPACOM. Bell Tr. at. p. 59:17-20. Defendant Bell did not set Plaintiff Roley's work schedule, nor did she direct that manner and means by which he provide his services to USPACOM. Bell Tr. at. p.61:1-62:8.

Defendant Bell's testimony during her deposition is probative:

```
                   59
12    Q   Okay.  You mentioned your duties.  I want to
13  ask you a little more in that area.
14        Could you have hired Mr. Roley without USPACOM
15  direction and approval?
16    A   No.
17    Q   Did you set his rate of pay?
18    A   No.
19    Q   Who did?
20    A   USPACOM.
21    Q    In the area of discipline, did you have
22  authority to fire Mr. Roley?
                   60
 1    A   No.
 2    Q   Who did?
 3    A   USPACOM.
 4    Q   Did you have the authority to suspend or
 5  demote him?
 6    A   No.
 7    Q   Who did?
```

8   A   USPACOM.
9   Q   Did you direct Mr. Roley's work?
10   A   No.
11   Q   Who did?
12   A   USPACOM.
13   Q   Did you give him assignments?
14   A   No.
15   Q   Did you tell him what to do?
16   A   No.
17   Q   Who gave him assignments?
18   A   USPACOM.
19   Q   And who told him what to do?
20   A   USPACOM.
21   Q   Did you evaluate his performance?
22   A   No.

                    61

1   Q   Who did?
2   A   USPACOM.
3   Q   Did you -- the phrase is "the manner and
4   means of completing work."  Were you involved in
5   determining how Mr. Roley did his work?
6   A   No.
7   Q   Who did?
8   A   USPACOM.
9   Q   Did you control the tools or equipment or
10   systems that Mr. Roley used to complete this work?
11   A   No.
12   Q   Who did?
13   A   USPACOM.
14   Q   Did you set his work schedule?
15   A   No.
16   Q   Who did?
17   A   USPACOM.
18   Q   Did you determine the location where he
19   would work?
20   A   No.
21   Q   Did you determine the office space that he
22   would use?

                    62

1   A   No.
2   Q   Who did?
3   A   USPACOM.
4   Q   And did you control how he accessed the
5   areas where he worked?
6   A   No.
7   Q   Who did?

8     A   USPACOM.

Bell Tr. at pp. 59:12 to 62:81.

Following this review of the many indicia of control, Plaintiff Roley's counsel did not raise any questions disputing Defendant Bell's testimony. On re-direct examination, counsel only addressed one area that touched upon control issues: the process for the use of leave. Bell Tr. at. p.62:12-63:5. In response to his question, Defendant Bell explained that if Plaintiff Roley had needed to take leave "He would have to get approval through the Command." *Id*.[7]

4.   <u>The Economic Realities Test Factors Confirm That Defendant Bell Was Not an Employer</u>.

Returning to the factors of economic reality test, the evidence confirms that the first factor--whether the putative employer had the power to "hire or fire" employees--was out of Defendant Bell's control. USPACOM instructed Defendant Bell to hire Plaintiff Roley. Bell Tr. p. 13:15-17, pp. 15:17-16:7, 31:10-12, 32:7-9, 34:18-20, 59:14-16. Once hired, USPACOM had the actual control over whether Plaintiff Roley was disciplined or terminated. Bell Tr. at pp. 59:21 - 60:3 and p. 60:4-8.

The second and third factors also were not within Defendant Bell's control. USPACOM set the work schedule and terms and conditions for Plaintiff Roley, as evidenced by the Assignment Agreements, and the nature of Plaintiffs performance of

---

[7] Searching for any basis to assert that Defendants NPX had the right to control Plaintiff Roley, Plaintiff's Motion points to a box in part 13 of the Assignment Agreement which discusses the ability of the "federal agency" of the "state or local government" to terminate the assignment.  *See*, Plaintiff's Memorandum at p. 23.
For reasons that are never explained, the Assignment Agreement refers to NPX as a state or local government. *See*, Pff. Exhibits 3-5 at Part 39, Section 7.  NPX is <u>not</u> a state or local government; it is a 501(C) (6) non-profit Organization. Bell Tr. at p. 14:4-8. Defendant Bell testified to her clear understanding regarding the right to terminate Plaintiff Roley: NPX did not have the actual authority to take that step. Bell Tr. at p. 59.  Such authority rested exclusively with USPACOM. *Id*.

work in Hawaii under USPACOM's direction. *Macsherry,* at p. 34. NPX processed Plaintiff Roley's payroll, but could not set any of the terms or conditions of his employment. Only USPACOM had that power. As such USPACOM set the rate and frequency of payment. Bell Tr. pp. 42:5-43:2 at p. 59:17-20.

The fourth factor, whether the employer maintained employment records, was shared by USPACOM and NPX. NPX had a personnel file, but any records beyond payroll and initial hiring materials related to pay and benefits would be in the possession of USPACOM. Bell Tr. at p. 29:15-21.

Application of the four factor economic reality test establishes that Defendant Bell lacked the formal control of Plaintiff Roley's employment at USPACOM and, thus, must be found to not be an employer for purposes of the MWPCL. Although the test is not to be applied "mechanically" (*Hardison,* at p.2), it is to be applied.  When it is applied in this case, the conclusion is that Defendant Bell was not an employer for purposes of the MWPCL.

     5.  <u>Review of The Totality of Circumstances Support the Finding That Defendant Bell Was Not An Employer</u>.

When the Court's review moves from the factors of economic realities test to the totality of the circumstances, the conclusion that Defendant Bell is not an employer becomes even clearer. Again, the undisputed evidence confirms, Defendant NPX was asked by USPACOM to hire Plaintiff Roley. Defendant NPX administered the processing of payroll and benefits.  As NPX's General Manager, Defendant Bell testified that she did not have the actual authority to:

1) Set Plaintiff Roley's rate of pay;

2) Discipline him;

24

3)  Fire, suspend, or demote him;

4)  Direct his work

5)  Give him assignments;

6)  Evaluate his performance;

7)  Determine the manner and means by which he completed tasks;

8)  Determine the tools he used to complete work;

9)  Set his schedule; or

10) Determine where he performed his work.

Bell Tr. at pp. 59:12 to 62:81

Plaintiff Roley's Motion argues that the Court should overlook the impact of applying the economic reality factors, consider the totality of the circumstances, and find Defendant Bell an employer even though she lacked formal control because she, purportedly, exercised "functional control." (Plaintiff's Memorandum at p. 24.) The support for this suggestion is *Newell v. Runnels*, 967 A.2d 729, 772 (Md. 2009). This argument also fails to withstand review.

First and foremost, *Newell's* focus on "functional control" comes within a discussion of the need "to assess whether an entity that lacked formal control nevertheless exercised functional control <u>over a worker</u>." *Newell,* 967 at p. 772 (emphasis added). The last portion of the sentence cannot be overlooked and speaks to the very control which Defendants Bell and NPX lacked.

The history of the parties' dealings supports the fact that the Defendants lacked "functional control over" Plaintiff Roley. The Plaintiff is the one who engaged in communications with USPACOM about the possibility of coming to work for them.

Affidavit of Plaintiff Roley at para 6.  This communication began seven to eight months

before he was hired. *Id.* After he had spent months discussing the possibility of

employment with the "Chief" of the Innovation and Experimentation Division at

PACOM, he was encouraged by USPACOM to contact NPX. *Id.* USPACOM then

contacted NPX and asked it to coordinate his hiring because USPACOM needed his skill

set.  Bell tr. at pp. 15:10-16:20 and pp. 30:20-34:20.

Application of Maryland's legal standard confirms that Defendant Bell was not an

employer; thus, there is no basis for imposing liability on her under Counts II and IV.

Defendant Bell held none of the traditional controls connected with an employer under

the MWPCL. Application of the economic realities test confirms this fact, as does

consideration of the totality of the circumstances. As such, Defendant Bell is entitled to a

judgment under Counts II and IV.[8] [9]

---

[8] Plaintiff's motion asks that this Court grant summary judgment against Defendant Bell on Counts I and III. *See*, Plaintiff's Memorandum at p. 33. Plaintiff argues that the inability to collect on any judgment from NPX should render Defendant Bell jointly and severally liable on Counts I and III. Plaintiff's Motion attempts to impose liability on Defendant Bell for counts that have not been brought against her individually.

Plaintiff has not provided sufficient evidence to justify piercing the corporate veil. Plaintiff has failed to present evidence to establish that Defendant Bell dominated and controlled National Professional Exchange, Inc. The fact that Defendant Bell's duties included supervision of the payroll department does not establish that she "dominated and controlled the organization."

There has been no evidence presented to support the idea that liability should be imposed to avoid injustice. Plaintiff Roley had the opportunity to bring suit against USPACOM as well as NPX. Plaintiff Roley made a decision not to do so. Whether he decided not to sue USPACOM because he has returned to their employment (See, Roley Aff. ¶3), or some other reason, failing to pursue a claim against one of the two other signatories to the Assignment Agreements under which he worked precludes him from now arguing that liability must be imposed on an officer of a corporation to avoid injustice.

Even more critically, the Plaintiff's Complaint does not include Defendant Bell as a defendant in Counts I and III. Plaintiff cannot not attempt to amend his Complaint through his Motion for Summary Judgment.

[9] For the same reasons why Defendant Bell is not an employer under Maryland law, Defendant Bell cannot be considered an employer under Hawaii law.

D.     __Plaintiff Is Not Entitled to Summary Judgment on Counts I and III__

Plaintiff ignores the role of USPACOM in funding NPX to provide for Plaintiff Roley's salary and expense reimbursement. The Assignment Agreements, which USPACOM is a party and signatory to, clearly state that USPACOM is responsible for funding salary and reimbursement.

Plaintiff's breach of contract analysis ignores the plain language of the underlying Assignment Agreements stating that NPX had no fiscal obligations to Plaintiff Roley, and that USPACOM was financially responsible for funding his salary. Upon notification of the underpayment issue, Defendant Bell promptly investigated the issue and took steps to receive additional funding from USPACOM. USPACOM's shirking of its financial obligations to Plaintiff Roley do not automatically render Defendant NPX liable for breach of contract. There is a genuine dispute of material fact regarding USPACOM's responsibilities under the Assignment Agreement, and its ultimate responsibility to pay monies admittedly owed to Plaintiff Roley. A trier-of-fact must decide the ultimate liability under the terms of the Assignment Agreement, as there is no discussion of where liability rests in the event of an accounting error, and under billing of USPACOM, and the subsequent underpayment by USPACOM to its employee.

Plaintiff argues that the only interpretation of the Assignment Agreements lends itself to the conclusion that Defendant NPX breached the contract through an inadvertent underpayment. Yet, the clear and unambiguous language actually states that USPACOM with all fiscal and financial responsibility for individuals' pay under the Assignment Agreement. The Assignment Agreements expressly stated that USPACOM was responsible for funding Plaintiff Roley's salary:

> *USPACOMJ81 will be responsible for funding Mr. Roley's salary and related costs from RDT&E funds allocated to J81, subject to availability, with prior concurrence from J02 & J84.  This Agreement is subject to immediate termination by USPACOM due to funding limitations without fiscal penalties or obligation.*

The Assignment Agreements also expressly stated that NPX was not financially responsible for funding Plaintiff Roley's salary:

> *Certified Organization: National Professional Exchange (NPX) Fiscal Obligations: None.   NPX is a non-profit organization with limited financial resources supporting the technology base of the Department of Defense through the cooperation of industry and government. NPX will continue to administer the payment of Mr. Roley's salary and will continue to withhold contributions to taxes and benefits and bill the government for such costs.*

See, Pff. Exhibits 3-5 at Part 9, Sections 26 & 27.

Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if "susceptible of two reasonable interpretations." *American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir.1965). For a court asked to grant summary judgment based on a contract's interpretation, the first step is to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face. When a writing is ambiguous, extrinsic evidence is admissible to determine the intentions of the parties to the document. *C B Structures, Inc. v. Potomac Elec. Power Co.*, 122 F. Supp. 3d 247, 252 (D. Md. 2015).  Here, there is more than just ambiguity as to whether USPACOM or NPX was responsible for Plaintiff Roley's salary. There are two opposite conclusions made by the Parties as to who is ultimately responsible for the underpayment based on

the contract. Thus, there is a genuine dispute as to Plaintiff's claims for breach of contract.  In the face of that genuine dispute, summary judgment is not.

## V.    <u>CONCLUSION.</u>

For all the foregoing reasons, Defendants NPX and Bell submit that there is no dispute as to any material fact and, as a matter of law they are entitled to a judgment on Counts II and IV of the Complaint. Plaintiff does not meet the standards necessary to seek relief under Maryland's Wage Payment and Collection Law. As to Count IV, Hawaii's Wage Payment Law, Plaintiff Roley is not entitled to relief because the statute of limitations ran prior to the filing of the Complaint. Thus, Plaintiff's motion on these Counts should be denied and Defendants' motion should be granted.

For separate reasons, Defendant Bell submits that she is not a proper defendant under either Count II or Count IV. Defendant NPX is a Section 501(c)(6) non-profit membership organization. Defendant Bell had no equity interest in Defendant NPX and lacked the crucial control over the work performed by Plaintiff Roley.

Finally, because genuine disputes exist on Plaintiff's claims for breach of contract (Counts I and III), the Court should deny Plaintiff's Motion on these Counts.

Respectfully submitted,

FERGUSON, SCHETELICH & BALLEW, P.A.

By:     _____/s/_____
        Craig F. Ballew
        Federal Trial Bar No.: 04932
        Rafiq R. Gharbi
        Federal Trial Bar No.: 20526
        100 S. Charles Street, Suite 1401
        Baltimore, MD 21201-2725
        (410) 837-2200
        cballew@fsb-law.com
        rgharbi@fsb-law.com
        *Attorneys for Defendants NPX and Bell*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 17th day of January, 2020, a copy of the foregoing Memorandum Supporting Motion for Partial Summary Judgment was served via Court's CM/ECF system on:

Brian J. Markovitz, Esq.
Joseph Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD  20770
bmarkovitz@jgllaw.com
*Attorneys for Plaintiff*

_____/s/_____
*Attorney for Defendants*

31